# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| UNITEDHEALTHCARE INSURANCE COMPANY, UNITED HEALTHCARE SERVICES, INC., AND UMR, INC.<br><br>                 Plaintiffs,<br><br>   vs.<br><br>ENVISION HEALTHCARE CORPORATION F/K/A ENVISION HEALTHCARE HOLDINGS, INC., AND ENVISION PHYSICIAN SERVICES, LLC,<br><br>                 Defendants. | **Case No.**<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

United HealthCare Services, Inc., UnitedHealthcare Insurance Company, and UMR, Inc. (collectively, "United") bring this action against Envision Healthcare Corporation f/k/a Envision Healthcare Holdings, Inc. and Envision Physician Services, LLC (collectively, "Envision"), and further allege as follows.

## NATURE OF THE ACTION

1. Envision operates one of the largest emergency room staffing and billing companies in the United States. It controls hundreds of emergency rooms nationwide. Since at least January 1, 2021 to the present, Envision has systematically deceived United into overpaying Envision by millions of dollars through a classic form of healthcare fraud called upcoding.

2. Upcoding occurs when a healthcare provider submits a claim to an insurer utilizing an improper Current Procedural Terminology (CPT) code, misrepresenting the nature or degree of

1

treatment rendered and exaggerating its complexity and expense. The provider thus deceives the insurer into overpaying.

3. When an insurer or claims administrator (like United) pays a health benefits claim, it relies on the information reflected in the claim, and particularly the CPT code, to determine the service provided to its member. CPT codes are standardized numeric codes that denote the nature and degree of treatment rendered to a patient. They are among the most important pieces of information included in a claim to an insurer or claims administrator, and a primary determinant of the amount the member's health plan will ultimately pay.

4. There are five primary CPT codes used to bill for emergency room visits, with gradations based on the urgency and complexity of care. The highest levels among these CPT codes are reserved for true medical emergencies that pose an exigent and significant threat to the life or physiological function of a patient. This treatment typically requires the physician's immediate, sustained, and undivided attention. Insurers or claims administrators, including United, typically pay claims utilizing these highest-level CPT codes at significantly higher rates than claims with CPT codes denoting less serious emergency room visits.

5. Envision has deliberately upcoded thousands of claims to United for emergency room services since at least January 1, 2021. It has utilized the most expensive CPT codes for emergency services on claims to United in instances where they were plainly not warranted. As a result, United has overpaid Envision by millions of dollars.

6. The results of United's investigation are consistent with public evidence pointing towards upcoding by Envision. For example, the USC-Brookings Schaeffer Initiative for Health Policy recently published an article titled *Private Equity Investment As A Divining Rod for Market Failure: Policy Responses to Harmful Physician Practice Acquisitions*. That article reported that

"when either of the two largest emergency physician staffing companies [of which Envision is one] contracted to staff a hospital's emergency department, it led to substantially higher in-network prices and charges, greater levels of upcoding, . . . and substantially higher rates of out-of-network billing."

7.   Prior to January 1, 2021, United had a contract with Envision. At least since the termination of that contract, Envision has systematically upcoded claims to United, as confirmed by United's review of claims submitted by Envision since that date. This has resulted in United making significant overpayments to Envision.

8.   The upcoded claims falsely stated that Envision's physicians rendered the most extensive treatment available under exigent circumstances, when they in reality had in fact treated routine health problems, such as food poisoning, anxiety, or the flu. In other words, Envision systematically misrepresented the services provided to United's members across thousands of individual claims in order to obtain higher payments from United.

9.   The difference between what the United paid on these claims and what it should have paid is substantial. Based on information currently available to United, United was deceived into paying Envision millions of dollars to which it was not entitled.

10. United approached Envision with its findings, attempted to negotiate a resolution, and shared a draft of this complaint with Envision to facilitate an amicable resolution of this dispute but told Envision it was prepared to file if the parties were unable to reach resolution.

11. Rather than act in good faith, Envision took United's confidential complaint, provided under Rule 408, and quickly and quietly drafted its own complaint based on United's and filed it without warning in an effort to beat United to the courthouse.[1] Despite engaging in fraud on United

---

[1] https://www.envisionhealth.com/news/2022/envision-healthcare-demands-unitedhealthcare-pay

3

that has been independently verified by academic studies, whistleblowers, and United's own firsthand investigation, Envision has now attempted to recast *United* as the villain, claiming United has unreasonably denied or "downcoded" its fraudulent claims. Envision's bad-faith tactics have left United no choice but to seek recourse in this Court.

12. United bring this action to put a stop to Envision's fraud, and to recoup the amounts Envision obtained through its scheme.

## PARTIES

13. Plaintiff United HealthCare Services, Inc. is a corporation organized under the laws of the State of Minnesota, with its principal place of business in the State of Minnesota. United HealthCare Services, Inc. is a claim administrator for health plans offered by employers.

14. Plaintiff UnitedHealthcare Insurance Company is a corporation organized under the laws of the State of Connecticut, with its principal place of business in the State of Connecticut. UnitedHealthcare Insurance Company insures and administers health plans for employers.

15. Plaintiff UMR, Inc. is a corporation organized under the laws of the State of Delaware, with is principal place of business in the State of Wisconsin. UMR, Inc. is a third party claims administrator that administers health insurance plans offered by employers.

16. Defendant Envision Healthcare Corporation is a Delaware corporation headquartered in Nashville, Tennessee. It is a lay entity created in June 2016 by merging Envision Healthcare Holdings, Inc. and AMSURG Corp. After the merger, Envision Healthcare Corporation combined and rebranded the two companies' physician services arms. In doing so, Envision and Sheridan combined into Envision Physician Services LLC. The next year, in 2018, KKR purchased the rest of Envision Healthcare Corporation for $9.9 billion.

4

17. Defendant Envision Physician Services, LLC is a Delaware Limited Liability Company headquartered in Nashville, Tennessee. It is and was at all times owned and controlled by Envision Healthcare Corporation.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because it arises under federal law—specifically, United brings claims under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, et seq. The Court further has subject matter jurisdiction over United's state and common law claims under 28 U.S.C. § 1367, as those claims are so related to the federal claim that they form part of the same case or controversy.

19. This Court has personal jurisdiction over the defendants because each maintains its principal place of business in Tennessee, and undertook or directed the tortious conduct at issue in this case from this jurisdiction.

20. Venue is proper in this district under 28 U.S.C. § 1391 as all defendants are residents of Tennessee, with their principal place of business in this district, and because a substantial part of the events giving rise to the claims in this action occurred in this district.

## BACKGROUND

### United Insures and Administers Health Plans

21. United provides health care insurance or claim administration services under a variety of plans and policies. This case concerns payments made from the United Plaintiffs' fully insured and self-funded plans.

22. United both funds and administers its fully insured plans. It pays claims submitted to these plans out of its own assets.

5

23. United's self-funded plans, or Administrative Services Only ("ASO") plans, are funded by contributions from their respective sponsor employers and member employees. United provides claim administration services for such plans pursuant to Administrative Services Agreements ("ASAs"), which identify the rights and obligations of United and the plan sponsors.

24. The ASAs for the ASO plans at issue in this litigation confer on United the fiduciary responsibility and discretion to administer claims under the plans. In performing its duties as claims administrator, United acts as a fiduciary for these plans as that term is defined in ERISA section 3(21).

25. Among other things, the ASAs give United the exclusive discretion and authority to monitor and pursue overpayments of plans funds. The ASAs state that the customers delegate to United the authority (but not the obligation) to recover overpayments resulting from fraud, waste, or abuse through litigation on behalf of the ASO plans.

26. United's ASAs typically state:

> Customer delegates to United the discretion and authority to develop and use standards and procedures for any recovery opportunity, including but not limited to whether or not to seek recovery, what steps to take if United decides to seek recovery, whether to initiate litigation or arbitration, the scope of such litigation or arbitration, which legal theories to pursue in such litigation or arbitration, and all decisions relating to such litigation or arbitration, including but not limited to, whether to compromise or settle any litigation or arbitration, and the circumstances under which a claim may be compromised or settled for less than the full amount of the potential recovery. In all instances where United pursues recovery through litigation or arbitration, Customer, on behalf of itself and on behalf of its Plan)s_, will be deemed to have granted United an assignment of all ownership, title, and legal rights and interests in and to any and all claims that are the subject matter of the litigation or arbitration.

27. The ERISA plans at issue in this litigation include this or substantially similar language. United will identify the specific members, claims, and plans at issue following the entry of a HIPAA-qualified protective order. Beyond the authority entrusted to United under ASAs with plan sponsors, United has a concrete business interest in paying only valid claims under the ASO plans

6

it administers. Envision's unlawful conduct directed to United's ASO plans has further injured the United Plaintiffs by forcing them to expend significant time and resources investigating and redressing Envision's unlawful practices and their resulting harm.

**United's Adjudication of Claims**

28. United processes (or "adjudicates") and pays approximately one million claims every day. Due to volume, it is impossible for United's employees to review medical records for each and every claim United receives.

29. Providers and billing companies typically do not submit medical records with insurance claims unless the United requests that they do so. Again, due to volume, it is impossible for the United's employees to request and review medical records for all, or even most, of the claims United receives.

30. Accordingly, by necessity, and as is common industry practice, the process by which United adjudicates claims is largely automated. To facilitate that process, United relies on providers to supply truthful and accurate information with insurance claims, and requires providers to attest to the accuracy of the claims they submit.

31. Providers and billing companies (including Envision) understand that United and other insurers and claims administrators adjudicate most claims automatically, and rely on providers to submit accurate claims.

32. As relevant here, Envision submits claims using the standardized CMS-1500 claim form or its electronic equivalent. This form includes a certification that the information reflected in the claim is "true, accurate and complete."

33. Certain fields in claims forms are particularly important to the amount United pays on claims.

7

34. CPT codes are among the most important information included in a claim. CPT codes are standardized codes that denote the type and degree of care rendered to a patient. They are the principal way in which providers convey to insurers and claims administrators the services for which they seek payment.

35. The type and degree of care indicated by the CPT code(s) included in a claim is a primary determinant of what United will pay on the claim. United relies on providers to represent accurately the type and degree of care provided through CPT codes. When a provider supplies an inaccurate CPT code with a claim, it can cause United to pay more than is warranted by the care provided.

36. Providers and billing companies (such as Envision) understand that United and other insurers and claims administrators rely on the accuracy of the information supplied with claims. They understand that misrepresentations—including the use of CPT codes that do not accurately reflect the type and degree of care provided—can cause insurers and claims administrators to overpay.

**Envision's Business Model and Aggressive Pursuit of Profit**

37. Envision is one of the largest emergency room staffing, billing, and collections companies in the United States. It employs more than 25,000 clinicians at over 780 hospitals nationwide.

38. Envision contracts with hospitals to staff their emergency rooms with doctors and other medical personnel, either directly or through medical groups Envision manages.

39. To the extent Envision manages medical groups, those medical groups are controlled by Envision. The medical groups Envision "manages" are nominally owned by physicians, but those physicians are paid and controlled by Envision. Envision has structured its ownership and

8

relationship of its managed medical groups in a manner that centrally controls medical personnel hiring, compensation, scheduling, staffing levels, and working conditions.[2]

40. This centralized corporate control minimizes the say actual physicians have in the provision of medical care at Envision hospitals. For example, it was widely reported that Envision fired a physician for raising concerns about prioritizing profits over adequate staffing—an event that commentators noted "shed light on pressures emergency physicians face when they are directed by profit-oriented companies."[3]

41. Envision contracts with health insurers without involvement or oversight by its medical personnel. Envision further requires that its physicians assign Envision the right to payment for their services. Envision decides what it will bill insurers without physicians ever knowing what Envision has billed in their name.

42. Envision handles billing claims to insurers and claims administrators like United through separate, non-medical staff. It codes and submits claims to insurers and claims administrators pursuant to policies set by Envision.

43. Envision has earned the dubious honor of a reputation for the relentless pursuit of profit at any cost. It generally bills for emergency room services at exorbitant rates. In one instance, the New York Times reported that, when Envision took over a small emergency room in Washington State, it increased the charge for high-severity emergency room treatment from $467 to a whopping $1,649.[4]

44. Historically, Envision has been able to charge these extraordinarily high prices by taking the emergency rooms it staffs out-of-network with insurers.

---

[2] https://www.nbcnews.com/health/health-care/doctor-fired-er-warns-effect-profit-firms-us-health-care-rcna19975
[3] https://www.nbcnews.com/health/health-care/doctor-fired-er-warns-effect-profit-firms-us-health-care-rcna19975
[4] https://www.nytimes.com/2017/07/24/upshot/the-company-behind-many-surprise-emergency-room-bills.html

9

45. This strategy resulted in higher bills not just for insurers, but for patients. Historically, Envision frequently balance-billed patients for any part of its exorbitant bills not covered by insurance. Envision's artificially inflated pricing hurts consumers both directly where Envision pursues payments directly from patients, and indirectly by driving up the cost of health care.

46. Beyond high prices, Envision has been accused of prescribing medically unnecessary treatment and testing to inflate bills to insurers like United. Indeed, Envision agreed to pay the United State $29.8 million to resolve allegations that it accepted illegal kickbacks from a hospital system in exchange for "recommending admission for patients whose medical care should have been billed as outpatient or observation services."[5] This allowed the hospital system to bill federal health programs at significantly higher rates for medically unnecessary admissions.

47. Envision has been accused of similarly unsupportable hospital admissions outside of the Medicare context. As discussed below, this not only allowed the hospitals to charge more to insurers like United, it provided Envision with a pretext to bill United for emergency services at the highest severity level.

48. These sorts of practices have led to congressional scrutiny. In particular, it has been widely reported that Missouri senator Claire McCaskill wrote a letter to Envision bluntly stating that its "staffing and management may have contributed to a decline in health care quality and access for patients."

49. In 2018, private equity firm KKR acquired Envision Healthcare Corporation for $9.9 billion, exacerbating overzealous profit-seeking.

50. Private equity firms like KKR apply significant pressure to the companies they acquire (such as Envision) to maximize near-term profits. As explained by one expert, "[p]rivate equity-

---

[5] https://www.justice.gov/usao-wdnc/pr/emcare-inc-pay-298-million-resolve-false-claims-act-allegations

backed health care has been a disaster for patients and for doctors," as "[m]any decisions are made for what is going to maximize profits for the private equity company, rather than what is best for the patient, what is best for the community."[6]

51. On information and belief, the upcoding in which Envision engaged in this case resulted in part from pressure applied by its private equity backer to maximize profits.

### Envision's Systematic Upcoding of Claims to United

52. This lawsuit principally concerns a form of insurance fraud called "upcoding."

53. Upcoding occurs when a provider submits a claim to an insurer or claims administrator utilizing an inaccurate billing code in order to obtain higher payment. The provider uses the billing code to deceive the insurer or claims administrator into overpaying by misrepresenting the type or degree of services rendered.

54. As relevant here, providers generally bill emergency room services to insurers using consecutively numbered CPT codes from 99281 to 99285. Higher numbers indicate more extensive and complex treatment billed at higher rates.

55. United generally pays claims utilizing CPT codes 99285 and 99284 at significantly higher rates than those utilizing CPT codes 99281 through 99283.

56. CPT codes 99285 and 99284 denote treatment of especially serious issues, typically requiring the physician's immediate, sustained, and undivided attention.

57. CPT Code 99285 is reserved for relatively rare cases in which the patient is at imminent risk of death or loss of physiological function. It is appropriate only when extreme circumstances require the most urgent and extensive treatment.

---

[6] Gretchen Morgenson and Emmanuelle Saliba, *Private equity firms now control many hospitals, ERs and nursing homes. Is it good for health care?*, NBC News (May 13, 2020), https://tinyurl.com/447ek9p9.

11

58. The American Medical Association provides the following definition of CPT Code 99285:

> Emergency department visit for the evaluation and management of a patient, which requires these 3 key components within the constraints imposed by the urgency of the patient's clinical condition and/or mental status: A comprehensive history; A comprehensive examination; and Medical decision making of high complexity. Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problem(s) are of high severity and pose an immediate significant threat to life or physiologic function.

59. CPT Code 99284 denotes emergency care for particularly severe and complex but non-life threating medical issues. It is appropriate only when the patient, even if not at immediate risk of death or loss of physiological function, requires urgent and extensive treatment.

60. The American Medical Association provides the following definition of CPT Code 99284:

> Emergency department visit for the evaluation and management of a patient, which requires these 3 key components: A detailed history; A detailed examination; and Medical decision making of moderate complexity. Counseling and/or coordination of care with other physicians, other qualified health care professionals, or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problem(s) are of high severity, and require urgent evaluation by the physician, or other qualified health care professionals but do not pose an immediate significant threat to life or physiologic function.

61. Numerous industry sources provide guidance as to clinical examples that would warrant billing using each of the five emergency room codes. The following chart outlines clinical examples or symptoms which are appropriate for each code:

| Level | Typical Presenting Problem | Clinical Examples |
|-------|----------------------------|-------------------|
| 99281 | The presented problem(s) are typically self-limited or minor conditions with no medications or home treatment required | Insect Bite (uncomplicated) Routine wound check Routine blood pressure check |
| 99282 | The presented problem(s) are of low or moderate severity | Localized skin rash, lesion, sunburn Minor viral infection |

12

| | | |
|---|---|---|
| | Treatment with over the counter medications or treatment, simple dressing changes, patient demonstrates understanding quickly and easily | Eye discharge (painless)<br>Urinary tract infection (simple)<br>Ear pain (otitis media, sinsusitis, vertigo, swimmer's ear, TMJ<br>Minor bruises, sprains |
| 99283 | The presented problem(s) are of moderate severity<br><br>Head injury instructions, crutch training, bending, lifting, weight-bearing limitations, prescription medication with review of side effects and potential adverse reactions | Headache (resolves after initial treatment)<br>Head injury (w/o neurological symptoms)<br>Cellulitis<br>Abdominal pain w/o advanced imaging<br>Minor trauma requiring imaging or medical procedures<br>Eye pain<br>Non-confirmed overdose<br>Mental health (anxiety, simple treatment)<br>Mild asthma<br>GI bleed, fissure, hemorrhoid<br>Chest Pain (GI or muscle related)<br>Localized infection requiring (IV) antibiotics & discharge (kidney infection) |
| 99284 | The presented problem(s) are of high severity and require urgent evaluation by the physician but do not pose an immediate significant threat to life or physiologic function.<br><br>Head injury instruction, crutch training, bending, lifting, weight-bearing limitations, prescription medication with review of side effects and potential adverse reactions | Headache (with advanced imaging, >1 treatment, admission)<br>Head injury with brief loss of conscience<br>Chest pain (stable & asymptomatic or quickly asymptomatic, requiring testing, home or admit to observation)<br>Intermediate trauma with limited diagnostic testing |
| 99285 | The presented problem(s) are of high severity and pose an immediate significant threat to life or physiologic function<br><br>Multiple prescription medications and/or home therapies with review of side effects and potential adverse reactions; diabetic, seizure or asthma teaching in compromised or non-compliant patients | Chest pain (unstable, acute myocardial infection)<br>Acute GI bleed (excluding fissure & hemorrhoid)<br>Severe respiratory distress (requiring diagnostic testing, 3 or more treatments, admission)<br>Epistaxis requiring complex packing and/or admission)<br>Critical trauma |

13

| | | Suspected sepsis requiring IV or IM antibiotics |
|---|---|---|
| | | Uncontrolled diabetes |
| | | Severe burns (3rd or 4th degree) |
| | | Hypothermia |
| | | Acute peripheral vascular compromise of extremities |
| | | Toxic ingestions |
| | | Suicidal or homicidal |
| | | New onset of neurological symptoms |

62. In recent years, Envision has faced a number of accusations of upcoding.

63. The New York Times reported that, before Envision took over the emergency room of a small hospital in Washington State, "about 6 percent of patient visits in the hospital's emergency room were billed for the most complex, expensive level of care," but "[a]fter [Envision] arrived, nearly 28 percent got the highest-level billing code."[7] The same article quotes a doctor at another hospital in California stating that he "discovered a pattern of inflated bills" after Envision took over the hospital's emergency room.

64. A qui tam complaint unsealed in August of 2020 shed additional light on Envision's upcoding.[8] The relators—a physician and a nurse who worked at an Envision-staffed facility—revealed the inner workings of Envision's upcoding scheme.

65. First, regardless of the severity of the medical issue occasioning a patient's visit, Envision requires physicians provide extensive documentation of patient encounters to make treatment appear more complex. As part of this process, Envision requires physicians to represent that they have performed a comprehensive patient examination and medical history

---

[7] https://www.nytimes.com/2017/07/24/upshot/the-company-behind-many-surprise-emergency-room-bills.html
[8] United States of America et al v. Envision Healthcare et al., 3:19-cv-00493 (M.D. Tenn.)

14

(even when they have not done so). While not medically necessary, this helps Envision paper over its decision to bill claims to insurers at higher-level CPT codes than warranted.

66.  When physicians fail to comply with this policy, Envision's non-medical coding staff returns patient charts to them and demands additional documentation—often suggesting the additional contents themselves. In doing so, the non-medical coding staff frequently informs physicians of the amount of money Envision will "lose" if they do not comply. One of the relators recounted that he received quarterly reports of claims that Envision had been unable to bill at CPT Code 99285, which reflected the amounts Envision "lost" as a result.

67. Beyond patient charting, Envision enacted policies that encouraged physicians and nurses to order unnecessary hospital admissions and testing to make treatment appear to be more complex and patient conditions more severe. In one example recounted by the relator, a physician ordered an electrocardiogram for an individual experiencing cold-like symptoms and used it to justify billing for the patient's treatment at CPT Code 99285. The relators also stated that nurses would commonly order IVs for patients that were never used to justify billing using CPT Code 99285.

68.  Finally, the relators stated that Envision regularly utilized a nurse acuity score—a number related to nurse staffing needs—as shorthand for the suggested coding level. But the nurse acuity score did not accurately reflect the complexity or urgency of treatment, and its use in this manner put a thumb on the scale in favor of inappropriate billing of CPT Code 99285.

69. United and Envision previously had a provider contract, which terminated effective January 1, 2021. United opted to terminate that contract after Envision insisted that United pay rates several times those United pays other providers for the same services.

70. As part of its routine payment integrity function, in 2021, United began reviewing randomly selected claims for E/M visits billed by Envision-affiliated medical groups. In reviewing those claims, United would ask for medical record documentation to substantiate the services being billed.

71. In total, United reviewed the medical records underlying more than 21,000 claims billed by Envision-affiliated medical groups. Based on its review of the underlying medical records, United determined that more than **60 percent** of the claims billed using the 99285 CPT code were upcoded.

**Examples of Envision's Upcoding**

72. The following are examples of Envision's upcoding uncovered by the United Plaintiff's investigation. In each case, Envision submitted a claim to the United Plaintiffs utilizing CPT code 99285 under circumstances plainly not warranting its use.

73. Patient 1 is a 31 year-old male who sought treatment in an emergency room staffed by Envision in January of 2021. The patient presented to the emergency room reporting flulike symptoms for two days. The patient denied shortness of breath, chest pain, nausea or vomiting. The patient was diagnosed with viral syndrome and sent home without further treatment. Despite the minor severity of the patient's clinical symptoms, Envision submitted a claim for this treatment utilizing CPT code 99285, the highest-severity CPT code, seeking $2,055.00 in reimbursement. The United Plaintiffs' claims review specialists determined that the circumstances and treatment did not warrant the use of CPT code 99285.

74. Patient 2 is a 37 year-old male who sought treatment in an emergency room staffed by Envision in January of 2021. The patient presented to the emergency room complaining of anxiety and panic attacks after finding out that his wife had been demoted at work. The patient

16

denied any suicidal ideations upon presentation to the emergency room. Labs were ordered and determined to be nonactionable. The patient was sent home without further treatment. Despite the minor severity of the patient's clinical symptoms, Envision submitted a claim for this treatment utilizing CPT code 99285, the highest-severity CPT code, seeking $1,850.00 in reimbursement. The United Plaintiffs' claims review specialists determined that the circumstances and treatment did not warrant the use of CPT code 99285.

75. Patient 3 is a 29 year-old female who sought treatment in an emergency room staffed by Envision in March of 2021. The patient presented to the emergency room complaining of a headache and scalp pain for the prior three months. A CAT Scan was performed and no acute abnormality was found. The patient was discharged with instructions to pursue outpatient treatment. Despite the minor severity of the patient's clinical symptoms, Envision submitted a claim for this treatment utilizing CPT code 99285, the highest-severity CPT code, seeking $1,850.00 in reimbursement. The United Plaintiffs' claims review specialists determined that the circumstances and treatment did not warrant the use of CPT code 99285.

76. Patient 4 is a 46 year-old male who sought treatment in an emergency room staffed by Envision in February of 2021. The patient presented to the emergency room complaining of difficulty urinating. Labs were ordered and it was determined that the patient had a urinary tract infection. The patient was discharged with instructions to follow-up with his doctor in 2-4 days. Despite the minor severity of the patient's clinical symptoms, Envision submitted a claim for this treatment utilizing CPT code 99285, the highest-severity CPT code, seeking $1,450.00 in reimbursement. The United Plaintiffs' claims review specialists determined that the circumstances and treatment did not warrant the use of CPT code 99285.

77. Patient 5 is a 23 year-old male who sought treatment in an emergency room staffed by Envision in January of 2021. The patient presented to the emergency room complaining of a migraine headache. A CAT scan and labs were performed and no acute abnormalities were identified. The patient was discharged and instructed to follow-up with his primary specialist in 3-5 days. Despite the minor severity of the patient's clinical symptoms, Envision submitted a claim for this treatment utilizing CPT code 99285, the highest-severity CPT code, seeking $1,450.00 in reimbursement. The United Plaintiffs' claims review specialists determined that the circumstances and treatment did not warrant the use of CPT code 99285.

78. Patient 6 is a 23 year-old female who sought treatment in an emergency room staffed by Envision in January of 2021. The patient presented to the emergency room complaining of a nosebleed. Labs were performed and the patient was diagnosed with a nosebleed. The patient was discharged with a nasal spray and instructions to follow-up with her primary care provider in 3-5 days. Despite the minor severity of the patient's clinical symptoms, Envision submitted a claim for this treatment utilizing CPT code 99285, the highest-severity CPT code, seeking $1,450.00 in reimbursement. The United Plaintiffs' claims review specialists determined that the circumstances and treatment did not warrant the use of CPT code 99285.

79. Patient 7 is a 13 month-old male who sought treatment in an emergency room staffed by Envision in February of 2021. The patient presented to the emergency room complaining of vomiting and a runny nose with no other symptoms. Labs were ordered and reviewed and the patient was diagnosed with viral gastroenteritis. The patient was discharged with instructions to follow-up with his primary physician in 2-3 days. Despite the minor severity of the patient's clinical symptoms, Envision submitted a claim for this treatment utilizing CPT code 99285, the highest-severity CPT code, seeking $2,260.00 in reimbursement. The United Plaintiffs' claims

18

review specialists determined that the circumstances and treatment did not warrant the use of CPT code 99285.

80. Patient 8 is a 26 year-old male who sought treatment in an emergency room staffed by Envision in January of 2021. The patient presented to the emergency room complaining of a hand injury. The patient stated that he was not aware of what caused the injury but thought he may have accidentally slept on his hand. An X-ray was ordered and  no fracture or dislocation was seen. A venous ultrasound was performed with no abnormalities found. The patient was diagnosed with gout and discharged. Despite the minor severity of the patient's clinical symptoms, Envision submitted a claim for this treatment utilizing CPT code 99285, the highest-severity CPT code, seeking $1,516.00 in reimbursement. The United Plaintiffs' claims review specialists determined that the circumstances and treatment did not warrant the use of CPT code 99285.

81. The foregoing examples are representative of United's findings across the claims it reviewed in the course of uncovering Envision's systematic upcoding.

**Envision's Upcoding was Deliberate and Fraudulent**

82. Envision deliberately upcoded claims utilizing CPT code 99285 as discussed above to deceive United into overpaying for emergency room services and to reap windfall profits at the expense of United and its members.

83. Envision employs a dedicated staff that prepares and submits insurance claims based on medical records received from physicians.

84. Envision policies encourage these coders to bill claims, and particularly emergency room claims, utilizing inappropriately high CPT codes. Indeed, per Envision policy, these coders do

more than simply review medical records when making coding decisions—they demand that physicians revise patient records to support billing claims utilizing CPT code 99285.

85. The rate at which Envision submitted claims to United improperly utilizing CPT code 99285 was far too high to have been unintentional.

86. Similarly, the degree to which many of the claims at issue clearly warranted lower CPT codes forecloses the possibility that the upcoding occurred through mistake. No coding professional would have applied CPT code 99285 to these claims unless instructed to do so contrary to the proper use of those CPT codes.

87. The degree and consistency of Envision's upcoding of claims utilizing CPT code 99285 demonstrates that it has a uniform policy or practice of upcoding such claims.

88. Despite the significant evidence uncovered by United's investigation, as well as the detailed allegations of upcoding made against Envision by others, much of the direct evidence related to Envision's upcoding remains solely in Envision's possession.

**United was damaged by Envision's Upcoding**

89. As discussed above, United relies on providers to submit accurate information with insurance claims, and particularly accurate CPT codes.

90. This is because United cannot review or investigate all claims it receives without the United States' healthcare system grinding to a halt.

91. Upcoding is a particularly insidious form of fraud that is difficult to uncover and resource-intensive to investigate.

92. Moreover, with respect to each of the claims at issue in this litigation, Envision falsely certified the information included in the claim was "true, accurate and complete."

20

93. United justifiably relied on the information Envision presented in the claims it submitted utilizing CPT Codes 99285 and 99284, and its attestations as to the accuracy of that information.

94. Based on United's investigation, United has overpaid Envision on more than 60% of its claims billed utilizing CPT code 99285 due to Envision's fraud. The information United requires to determine conclusively which of the specific claims it paid were upcoded remains exclusively in Envision's possession.

95. Given the large volume of information, as well as its medically sensitive nature, United will produce information identifying the universe of potentially upcoded claims at issue in this litigation following the entry of a HIPAA-qualified protective order.

96. United estimates, based on its investigation of the rate and degree of Envision's upcoding, that it overpaid Envision by millions of dollars between January 1, 2021 and the present.

**TOLLING**

97. To the extent any limitations periods may apply to United's claims, those limitations periods were tolled during the period before United uncovered Envision's systematic upcoding. Until that point, United lacked knowledge of the fact that Envision had deliberately and systematically deceived it into overpaying on claims for emergency room services.

**COUNT I: FRAUD**

98. United incorporates the foregoing paragraphs as if fully set forth herein and further allege as follows.

99. Envision deliberately and systematically misrepresented the nature of the services it rendered to United's insureds by submitting claims to United that utilized CPT code when not justified.

21

100.    Envision further falsely certified that the information reflected in each claim it submitted to the United Plaintiffs was "true, accurate and complete."

101.    The false information included in the claims at issue was material to United's decision as to the amount it would pay. CPT code 99285 denotes services that United reimburses at higher rates than typical emergency room services. Had Envision utilized accurate CPT codes, United would have paid less.

102.    Envision knew that the claims at issue in this litigation should not have utilized CPT code 99285, and that the certifications it made in connection with these claims were false. It nonetheless employed CPT code 99285 and certified the accuracy of its claims in order to obtain higher payments from United than those to which it was entitled.

103.    Alternatively, Envision acted recklessly in including these misrepresentations in the claims at issue in this litigation, and in certifying their accuracy.

104.    Envision further knew and intended that United would rely on the information included in the claims at issue in this litigation when determining the amount it would pay on those claims.

105.    United justifiably relied on the information Envision included in the claims it submitted. United is not able to review all of the claims it receives individually, or to request and review medical records for all claims. Providers understand that insurers rely on the accuracy of claims and certify the accuracy of the claims they submit. And because Envision engaged in a subtle form of fraud involving deliberate exaggeration rather than outright fabrication, its fraud was difficult to detect, investigate, and confirm.

106.     United was damaged by Envision's misrepresentations in that Envision deceived United into overpaying on Envision's claims. Had United understood that the claims did not merit CPT code 99285, it would have paid less.

107.     United estimates that Envision deceived it into overpaying by tens of millions of dollars since January 1, 2021.

108.     The evidence necessary to determine the full universe of Envision's upcoded claims remains solely and exclusively in Envision's possession.

## COUNT II: NEGLIGENT MISREPRESENTATION

109.     United incorporates the foregoing paragraphs as if fully set forth herein and further alleges as follows.

110.     Envision deliberately and systematically misrepresented the nature of the services it rendered to United's insureds by submitting claims to United that utilized CPT code 99285 when not justified.

111.     Envision further falsely certified that the information reflected in each claim it submitted to United was "true, accurate and complete."

112.     Envision acted in the course of its business in making these misrepresentations to United, and further made these misrepresentations to United in connection with transactions in which it had a pecuniary interest.

113.     Envision intended the false information it supplied with its claims to guide United in its payment of those claims.

114.     The false information included in the claims at issue was material to United's decision as to the amount it would pay. CPT code 99285 denotes services that United reimburses

23

at higher rates than typical emergency room services. Had Envision utilized accurate CPT codes, United would have paid less.

115.    Envision failed to exercise reasonable care in utilizing CPT code 99285 on the claims at issue in this litigation, which did not merit their use.

116.    United justifiably relied on the information Envision included in the claims it submitted. United is not able to review all claims it receives individually, or to request and review medical records for all claims. Providers understand that insurers rely on the accuracy of claims and certify the accuracy of the claims they submit. And because Envision engaged in a subtle form of fraud involving deliberate exaggeration rather than outright fabrication, its fraud was difficult to detect, investigate, and confirm.

117.    United was damaged by Envision's misrepresentations in that Envision deceived United into overpaying on Envision's claims. Had United understood that the claims did not merit CPT code 99285, it would have paid less.

118.    United estimates that Envision deceived it into overpaying by tens of millions of dollars on claims submitted by Envision since January 1, 2021.

119.    The evidence necessary to determine the full universe of Envision's upcoded claims remains solely and exclusively in Envision's possession.

**COUNT III**: FRAUDULENT INSURANCE ACT (TENN. CODE §§ 56-53-102, 56-53-107)

120.    United incorporates the foregoing paragraphs as if fully set forth herein and further alleges as follows.

121.    Tenn. Code § 56-53-102(b) states that it "shall be unlawful for any person to commit, or to attempt to commit, or aid, assist, abet or solicit another to commit, or to conspire to commit a fraudulent insurance act."

24

122. Tenn. Code § 56-53-102(a) defines "fraudulent insurance act" to include "knowingly and with intent to defraud, and for the purpose of depriving another of property or for pecuniary gain," "[p]resent[ing], caus[ing] to be presented, or prepar[ing] with knowledge or belief that it will be presented . . . any information that contains false representations as to any material fact, or that withholds or conceals a material fact concerning" a "claim for payment or benefit pursuant to any insurance policy."

123. Tenn. Code § 56-53-107(b) provides a private right of action for "[a]ny person injured in the person's business or property" by a "fraudulent insurance act" as defined in Tenn. Code § 56-53-102. A prevailing plaintiff is entitled to "(A) Return of any profit, benefit, compensation or payment received by the person violating § 56-53-102 directly resulting from the violation; (B) Reasonable attorneys' fees, related legal expenses, including internal legal expenses and court costs; (C) All other economic damages directly resulting from the violation of § 56-53-102; (D) Reasonable investigative fees based on a reasonable estimate of the time and expense incurred in the investigation of the violation or violations of § 56-53-102 proved at trial; and (E) A penalty of no less than one hundred dollars ($100) and no greater than ten thousand dollars ($10,000)."

124. Tenn. Code Ann. § 56-53-107(c) provides that if the plaintiff demonstrates the defendant's "fraudulent insurance act" was "part of a pattern or practice of such violations," the plaintiff "shall be entitled to recover threefold the injured person's economic damages."

125. Envision committed a "fraudulent insurance act" within the meaning of Tenn. Code § 56-53-102 each time it deliberately submitted a claim to United utilizing CPT codes 99285 and 99284 when not justified. Each such claim constituted a "false representation[ ] as to [a] material fact" related to a "claim for payment or benefit pursuant to any insurance policy."

25

126.     Envision similarly committed a "fraudulent insurance act" within the meaning of Tenn. Code § 56-53-102 each time it falsely certified such a claim to be "true, accurate and complete."

127.     As discussed above, Envision submitted these false and misleading insurance claims "knowingly and with intent to defraud, and for the purpose of depriving [United] of property or for pecuniary gain."

128.     The false information at issue was material to United's decision as to the amount it would pay. CPT code 99285 denotes services that United reimburses at higher rates than typical emergency room services. Had Envision utilized accurate CPT codes, United would have paid less.

129.     United justifiably relied on the information Envision included in the claims it submitted. United is not able to review all claims it receives individually, or to request and review medical records for all claims. Providers understand that insurers rely on the accuracy of claims and certify the accuracy of the claims they submit. And because Envision engaged in a subtle form of fraud involving deliberate exaggeration rather than outright fabrication, its fraud was difficult to detect, investigate, and confirm.

130.     United was damaged by Envision's misrepresentations in that Envision deceived United into overpaying on Envision's claims. Had United understood that the claims did not merit CPT code 99285, it would have paid less.

131.     Envision's submission of claims fraudulently utilizing CPT code 99285 was "part of a pattern or practice of such violations."

132.     United estimates that Envision deceived it into overpaying by tens of millions of dollars on claims submitted by Envision since January 1, 2021.

26

133.     The evidence necessary to determine the full universe of Envision's upcoded claims remains solely and exclusively in Envision's possession.

**COUNT IV: UNLAWFUL INSURANCE ACT (TENN. CODE §§ 56-53-103, 56-53-107)**

134.     United incorporates the foregoing paragraphs as if fully set forth herein and further alleges as follows.

135.      Tenn. Code § 56-53-103(b) states that it "shall be unlawful for any person to commit, or to attempt to commit, or aid, assist, abet or solicit another to commit, or to conspire to commit an unlawful insurance act."

136.     Tenn. Code § 56-53-103(a) defines "unlawful insurance act" to include "[p]resent[ing], caus[ing] to be presented, or prepar[ing] with knowledge or belief that it will be presented . . . any information that the person knows to contain false representations, or representations the falsity of which the person has recklessly disregarded, as to any material fact, or . . . withhold[ing] or conceal[ing] a material fact, concerning" a "claim for payment or benefit pursuant to any insurance policy."

137.     Tenn. Code § 56-53-107(a) provides a private right of action for "[a]ny person injured in the person's business or property" by an "unlawful insurance act" as defined in Tenn. Code § 56-53-103. A prevailing plaintiff is entitled to "(A) Return of any profit, benefit, compensation or payment received by the person violating § 56-53-103 directly resulting from the violation; and (B) Reasonable attorneys' fees, related legal expenses, including internal legal expenses and court costs."

138.     Envision committed an "unlawful insurance act" within the meaning of Tenn. Code § 56-53-103 each time it recklessly submitted a claim to United utilizing CPT codes 99285

27

and 99284 when not justified and. Each such claim constituted a "false representation[ ] as to [a] material fact" related to a "claim for payment or benefit pursuant to any insurance policy."

139.     Envision similarly committed an "unlawful insurance act" within the meaning of Tenn. Code § 56-53-103 each time it falsely certified such a claim to be "true, accurate and complete."

140.     As discussed above, Envision submitted these false and misleading insurance claims "know[ing] [them] to contain false representations," or at the very least, "representations the falsity of which [Envision] . . . recklessly disregarded."

141.      The false information included in the claims at issue was material to United's decision as to the amount it would pay. CPT code 99285 denotes services that United reimburses at higher rates than typical emergency room services. Had Envision utilized accurate CPT codes, United would have paid less.

142.     United justifiably relied on the information Envision included in the claims it submitted. United is not able to review all claims it receive individually, or to request and review medical records for all claims. Providers understand that insurers rely on the accuracy of claims and certify the accuracy of the claims they submit. And because Envision engaged in a subtle form of fraud involving deliberate exaggeration rather than outright fabrication, its fraud was difficult to detect, investigate, and confirm.

143.     United was damaged by Envision's misrepresentations in that Envision deceived United into overpaying on Envision's claims. Had United understood that the claims did not merit CPT code 99285, it would have paid less.

144.     Envision's submission of claims fraudulently utilizing CPT code 99285 was "part of a pattern or practice of such violations."

145.     United estimates that Envision deceived it into overpaying by tens of millions of dollars on claims submitted by Envision since January 1, 2021.

146.     The evidence necessary to determine the full universe of Envision's upcoded claims remains solely and exclusively in Envision's possession.

## COUNT V: TENNESSEE CONSUMER PROTECTION ACT & OTHER STATE CONSUMER PROTECTION STATUTES

147.     Tenn. Code § 47-18-104(a) declares that "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices."

148.     Under Tenn. Code § 47-18-104(b), the enumerated "unfair or deceptive acts or practices" that are "unlawful and in violation of this part" include "[r]epresenting that . . . services have . . . characteristics . . . or quantities that they do not have," and "[r]epresenting that . . . services are of a particular standard, quality or grade . . . if they are of another."

149.     Tenn. Code § 47-18-109(a)(10) defines "[s]ervices" to include "any work, labor, or services including services furnished in connection with the sale or repair of goods or real property or improvements thereto."

150.     Tenn. Code § 47-18-109 provides a private right of action for violations of the law, stating that "[a]ny person who suffers an ascertainable loss of money . . . as a result of the use or employment by another person of an unfair or deceptive act or practice . . . may bring an action individually to recover actual damages." Moreover, if a violation is "willful or knowing . . . the court may award three (3) times the actual damages sustained and may provide such other relief as it considers necessary and proper."

151.     Envision misrepresented the "characteristics," "qualities," and "standard" of its services within the meaning of Tenn. Code § 47-18-104(b) each time it submitted a claim to United improperly utilizing CPT codes 99285 and 99284. Each such claim conveyed that a

physician had rendered exigent treatment of an especially serious condition for one of United's insureds, meriting payment at higher rates than typical emergency room services. In reality, Envision had not performed such services.

152.     The false information included in the claims at issue was material to United's decision as to the amount it would pay. CPT code 99285 denotes services that United reimburses at higher rates than typical emergency room services. Had Envision utilized accurate CPT codes, United would have paid less.

153.     United justifiably relied on the information Envision included in the claims it submitted. United is not able to review all claims it receives individually, or to request and review medical records for all claims. Providers understand that insurers rely on the accuracy of claims and certify the accuracy of the claims they submit. And because Envision engaged in a subtle form of fraud involving deliberate exaggeration rather than outright fabrication, its fraud was difficult to detect, investigate, and confirm.

154.     United suffered "an ascertainable loss of money" due to Envision's false and misleading claims in that Envision deceived United into overpaying on those claims. Had United understood that the claims did not merit CPT code 99285, it would have paid less.

155.     United estimates that Envision deceived it into overpaying by millions of dollars on claims submitted by Envision since January 1, 2021.

156.     The evidence necessary to determine the full universe of Envision's upcoded claims remains solely and exclusively in Envision's possession.

157.     The foregoing conduct further violated the similar consumer protection laws of the following states:

   a.   Cal. Bus. & Prof. Code § 17200, *et seq.* (California);

   b.   Colo. Rev. Stat. § 6-1-101, *et seq.* (Colorado);

30

  c. Fla. Stat. § 501.201, *et seq.* (Florida);

  d. 815 Ill. Comp. Stat. 505/1, *et seq.* (Illinois);

  e. Mich. Comp. Laws § 445.901, *et seq.* (Michigan);

  f. Minn. Stat. § 325F.68, *et seq.* (Minnesota);

  g. Neb. Rev. Stat. § 59-1601, *et seq.* (Nebraska);

  h. Nev. Rev. Stat. § 41.600, *et seq.* (Nevada);

  i. N.H. Rev. Stat. Ann. § 358-A:1, *et seq.* (New Hampshire);

  j. N.Y. Gen Bus. Law § 349, *et seq.* (New York); and

  k. N.C. Gen. Stat. § 75-1.1, *et seq.* (North Carolina).

158. United overpaid claims Envision submitted for services performed in each of the foregoing jurisdictions.

159. Envision's false insurance claims hurt not only United, but its individual members and healthcare consumers generally. United, like all insurers, generally require its members to bear some portion of the cost of their care—a feature of United's plans called "cost-sharing obligations." For each claim that Envision upcoded on which United's member owed cost-sharing obligations, that member bore higher costs as a result of Envision's fraud.

**COUNT VI: DECLARATORY AND INJUNCTIVE RELIEF**
**UNDER ERISA § 502(a)(3) and 28 U.S.C. §§ 2201 and 2202**

160. United incorporates the foregoing paragraphs as if fully set forth herein and further alleges as follows.

161. United acts as a claims administrator and has been delegated the authority to pursue recovery of payments made by United on behalf of certain self-funded plans covered by ERISA. United has standing to sue under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), for declaratory and injunctive relief to enjoin any acts or practices that violate the provisions of the plans and to obtain other appropriate relief to redress violations of and enforce plan terms.

31

162.     Each of the ERISA plans administered by United at issue in this litigation only permits reimbursement of services that were actually provided to the member.

163.     Envision has engaged in a scheme to defraud United into paying sums in excess of what was owed (for services not actually rendered) under the relevant ERISA plans by systematically and fraudulently upcoding claims.

164.     Envision's practice is deceptive, unfair, and unlawful.

165.     Any claims that have been denied, are pending, or may be submitted in the future that Envision has falsified in the foregoing manner are not payable and void.

166.     There is a *bona fide*, present need for a declaration as to the unlawfulness of Envision's conduct. United is entitled to a judgment declaring that Envision's practices are illegal, and that any claims for payments of benefits submitted as a result of Envision's scheme are not payable and void.

167.     United seeks an order: (1) declaring that claims Envision has submitted that remain pending or that may be submitted in the future are not payable and void to the extent Envision inappropriately utilized CPT code 99285; and (2) enjoining Envision from submitting further such claims to its ERISA plans.

168.     United also seeks recovery of reasonable attorneys' fees and costs under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1).

## COUNT VII: VIOLATION OF CIVIL RICO, 18 U.S.C. § 1962(c)

169.     United incorporates the foregoing paragraphs as if fully set forth herein and further alleges as follows.

170.     Envision Healthcare Corporation, Envision Physician Services, LLC, and the nominally independent medical groups with whom they affiliate are "persons" within the

32

meaning of 18 U.S.C. § 1961(3) that conducted the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

171.     Envision Healthcare Corporation f/k/a Envision Healthcare Holdings, Inc. and Envision Physician Services, LLC entered into an association-in-fact enterprise (the "Enterprise") within the meaning of 18 U.S.C. § 1961(4) with the nominally independent medical groups that they affiliate with throughout the United States. The Enterprise was an ongoing organization that functioned as a continuing unit. The Enterprise was created and/or used as a tool to effectuate a pattern of racketeering activity, and the Enterprise had the common purpose of doing the same. Envision Healthcare Corporation, Envision Physician Services, LLC, and the medical groups are each "persons" distinct from the Enterprise.

172.      Envision Healthcare Corporation, Envision Physician Services, LLC established the Enterprise in order to reap windfall profits through a pattern of fraudulent upcoding. The Enterprise worked to deceive insurers like United into overpaying for emergency room services by means of fraud perpetrated over the wires or by mail.

173.     Each participant in the Enterprise played a distinct and indispensable role, and the participants joined as a group to execute the scheme and further the Enterprise's goals. Envision Healthcare Corporation, Envision Physician Services, LLC set policies requiring or encouraging the falsification of insurance claims as explained above. The various medical groups with which these entities affiliated carried out those policies by generating and falsifying medical records to support upcoding claims for emergency services, and by ordering unnecessary tests and hospital admissions to support claims for upcoded services. Envision Healthcare Corporation and Envision Physician Services, LLC then submitted the fraudulent, upcoded claims.

33

174.     All members of the Enterprise benefitted financially from the Enterprise. Envision Healthcare Corporation and Envision Physician Services, LLC obtained inflated payments from insurers, and on information and belief, passed along some of the proceeds to their affiliated medical groups.

175.     The Enterprise could not have succeeded, and its members could not have enjoyed the substantial financial benefits described above, absent their coordinated efforts. The members of the Enterprise functioned as a unit in pursuit of their common purpose.

176.     The relationships between the members of the Enterprise extended beyond the unlawful predicate acts at issue in this case. In particular, some portion of the insurance claims generated by the Enterprise and submitted to United were not upcoded. The illegal scheme at issue in this litigation was and is distinct from any legitimate business activities undertaken by the members of the Enterprise.

177.      Each participant in the Enterprise, and in particular Envision Healthcare Corporation and Envision Physician Services, LLC, knew their scheme violated federal and state laws, and acted with the specific intent to defraud United and other insurers.

178.      The Enterprise engaged in and affected interstate commerce because, among other things, it operated emergency rooms nationwide in to support its scheme.

179.     Envision Healthcare Corporation and Envision Physician Services, LLC conducted and participated in the affairs of the Enterprise through a pattern of racketeering activity that includes acts indictable under 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and 1952 (use of interstate facilities to conduct unlawful activity).

180.     Predicate acts of racketeering that Envision Healthcare Corporation and Envision Physician Services, LLC engaged in include, but are not limited to:

34

      a.   The use of wires and mails to submit fraudulent claims to United and other insurers;

      b.   The use of wires and mails to coordinate the unlawful activities of the Enterprise, including the dissemination of relevant policies and the transmission of medical records from medical groups to coding staff;

      c.   The use of the wires and mails to obtain payments from United, and to distribute the proceeds of the scheme amongst its members.

181.     Paragraphs 73-80 above include specific and representative examples of the fraudulent insurance claims the Enterprise submitted to United using the wires and mails.

182.     The above-described acts reveal a sustained pattern of racketeering activity, in addition to the threat of continued racketeering activity.

      a.   The racketeering activity at issue commenced, at the latest, on January 1, 2021, and has continued to the present. As discussed above, there is substantial evidence that the Enterprise commenced its unlawful conduct as to other insurers much earlier, with the New York Times article and qui tam complaint described above addressing similar conduct by Envision that occurring five or more years ago. During this period, the Enterprise has operated continuously, submitting upcoded claims on a daily basis.

      b.   The pattern and policy of submitting fraudulent claims for emergency services has become the regular manner in which Envision Healthcare Corporation, Envision Physician Services, LLC, and their affiliated medical groups conduct their business, and this unlawful behavior will continue indefinitely.

183.     The purpose and effect of the Enterprise's racketeering activity was to defraud United and other insurers out of substantial sums of money by deceiving them into significantly overpaying on claims. The Enterprise caused this result by systematically submitting upcoded claims for emergency room services that deliberately misrepresented the nature and degree of services rendered.

184.     United suffered injuries when it overpaid on fraudulent claims for emergency room services, losing millions of dollars as a result of the Enterprise's racketeering activity.

185.     United's injuries were directly and proximately caused by the racketeering activities as described above.

186.     By virtue of these violations of 18 U.S.C. § 1962(c), Envision Healthcare Corporation and Envision Physician Services, LLC are jointly and severally liable to United for three times the damages United has sustained in an amount to be determined at trial, plus the cost of this suit, including reasonable attorneys' fees.

## COUNT VIII: CONSPIRACY TO VIOLATE CIVIL RICO, 18 U.S.C. § 1962(d)

187.     United incorporates the foregoing paragraphs as if fully set forth herein and further alleges as follows.

188.     18 U.S.C. § 1962(d) provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

189.     Envision Healthcare Corporation and Envision Physician Services, LLC have violated 18 U.S.C. § 1962(d) by conspiring with their affiliated medical groups to violate 18 U.S.C. § 1962(c). The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the Enterprise described herein through a pattern of racketeering activity.

36

190.     Envision Healthcare Corporation, Envision Physician Services, LLC, and their affiliated medical groups have engaged in numerous overt and predicate fraudulent racketeering acts in furtherance of the conspiracy.

191.     The nature of the above acts, material misrepresentations, and omissions in furtherance of the conspiracy gives rise to an inference that they not only agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(c), but also that they were aware that their ongoing acts have been and are part of an overall pattern of racketeering activity.

192.     As a direct and proximate result of Envision Healthcare Corporation and Envision Physician Services, LLC's overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), United has been injured in its business and property as set forth more fully above.

193.     The purpose and effect of the conspiracy was to deceive United and other insurers into overpaying for emergency room services through the systematic submission of fraudulent claims.

194.     United suffered injuries when it overpaid on these upcoded claims for emergency room services.

195.     By virtue of these violations of 18 U.S.C. § 1962(d), Envision Healthcare Corporation and Envision Physician Services, LLC are jointly and severally liable to the United Plaintiffs for three times the damages the United Plaintiffs have sustained in an amount to be determined at trial, plus the cost of this suit, including reasonable attorneys' fees.

37

## COUNT IX: UNJUST ENRICHMENT

196.     United incorporates the foregoing paragraphs as if fully set forth herein and further allege as follows.

197.     United conferred a benefit on Envision in the form of payments for emergency room services.

198.     Envision appreciated and retained the payments rendered by United for emergency room services billed to United.

199.     Envision received those payments under circumstances in which it would be unjust to permit Envision to retain the full amounts paid. The claims at issue were improperly coded as 99285 and 99284, resulting in United making higher payments than warranted. As discussed above, Envision acted inequitably in submitting these claims.


## PRAYER FOR RELIEF

WHEREFORE, United respectfully requests an award in its favor and granting the following relief:

a. Issuance of summons to Defendants to be served and answered within the time required by law;

b. An award of compensatory damages as requested herein;

c. Equitable relief as requested herein;

d. Declaratory relief as requested herein;

e. Injunctive relief as requested herein;

f. Treble damages as permitted under RICO and any other applicable state statutes;

g. Costs of court;

h.  Reasonable attorney fees;

i.  Prejudgment and post-judgment interest; and

j.  An award of any other relief in law or equity that the Court deems just and proper.

Date: September 9, 2022

Respectfully submitted,

**PAINE, TARWATER & BICKERS, LLP**

*/s/ Dwight E. Tarwater*

Dwight E. Tarwater (BPR #007244)
det@painetarwater.com
Michael J. King (BPR #015523)
mjk@painebickers.com
900 South Gay Street, Suite 2200
Knoxville, Tennessee 37902-1821
T: (865) 525-0880

and

**ROBINS KAPLAN LLP**

Jeffrey S. Gleason (*pro hac vice* to be filed)
jgleason@robinskaplan.com
Jamie R. Kurtz (*pro hac vice* to be filed)
jkurtz@robinskaplan.com
Charley C. Gokey (*pro hac vice* to be filed)
cgokey@robinskaplan.com
Nathaniel J. Moore (*pro hac vice* to be filed)
nmoore@robinskaplan.com
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402–2015
T: (612) 349–8500

and

Paul D. Weller (*pro hac vice* to be filed)
pweller@robinskaplan.com
Gregory S. Voshell (*pro hac vice* to be filed)
gvoshell@robinskaplan.com
900 Third Avenue
Suite 11900
New York, New York 10022
T: (212) 980-7400

***Counsel for the United Plaintiffs***

40